# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SANTA LIDIA ESQUIVEL, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 13-11398-FDS |
| TARGET CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT

SAYLOR, J.

This is an action in negligence arising out of a slip-and-fall incident. Jurisdiction is based on diversity of citizenship.

On June 8, 2010, plaintiff Santa Lidia Esquivel slipped and fell on a pool of liquid in a Target store in Somerville, Massachusetts, operated by defendant Target Corporation. She now brings suit, alleging that her slip and fall was caused by defendant's negligent failure to clean up the liquid.

Defendant has moved for summary judgment, contending that it did not breach its duty of care towards plaintiff. For the following reasons, the motion will be granted.

**I.    Background**

The following facts are undisputed.

**A.    Factual Background**

Santa Lidia Esquivel is a Massachusetts citizen residing in Malden, Massachusetts. (Notice of Removal ¶6(b)). Target Corporation is a Minnesota corporation with a principal place

of business in Minneapolis, Minnesota. (*Id.* ¶ 6(a)). Target owns and operates the Target store located at 180 Somerville Avenue in Somerville, Massachusetts. (Pl. SMF ¶ 5).

On June 8, 2010, Esquivel went to the Somerville Target store to purchase sheets. (*Id.* ¶ 6). She went to the rear left corner of the store where sheets were sold. (Def. SMF ¶¶ 7, 26). In that area of the store, there was an emergency exit and a locked door to the store's electric room. *Id.* ¶ 28). There were no beverages for sale in that area of the store. (*Id.* ¶ 27).

When stepping forward to get the sheets she wanted to purchase, Esquivel slipped in a pool of liquid and fell. (*Id.* ¶¶ 8, 12). Both her feet slipped, and her blouse and the right side of her pants became wet. (*Id.* ¶¶ 9, 11; Pl. SMF ¶ 29). Although Esquivel did not see the liquid before she fell, she saw it afterwards, describing it as "quite a lot of water" about the size of an automobile tire. (Pl. SMF ¶ 24; Def. SMF ¶¶ 10, 12). A Target incident report described the aisle as having "plenty of water on the floor." (Pl. SMF ¶ 28). The liquid looked clear, and the edge of the pool was approximately a foot from the shelf holding the sheets. (Def. SMF ¶¶ 12, 15). There was no investigation into what the liquid was before it was cleaned up. (Andrade Dep. at 55). Esquivel did not know where the liquid came from or how long it had been there. (*Id.* ¶¶ 13, 14).

As a result of her fall, Esquivel tore her rotator cuff. (Pl. SMF ¶ 8). She underwent surgery to repair the tear. (*Id.* ¶ 9). She continues to suffer chronic pain in her shoulder and the injury prevented her from working for four months. (*Id.* ¶¶ 10, 12). She also contends that her injuries prevent her from being able to dance. (*Id.* ¶ 14).

On June 8, 2010, twenty-three employees were working at the Somerville Target store. (Pl. SMF ¶ 17). Sixteen or seventeen of those employees were assigned to handle various areas

2

of the store. (*Id.* ¶ 16). The Somerville Target store is one of the smallest Target stores in the area. (Andrade Dep. at 28).

Target employees are trained to walk their departments and adjacent areas to monitor the cleanliness and neatness of the store. (Pl. SMF ¶ 40). At her deposition, Andrade testified that employees are supposed to monitor the store "[h]our by hour, minute through minute as you walk through the store." (Andrade Dep. at 20). If an employee finds a spill in an aisle, he or she is responsible for cleaning it up. (*Id.* ¶ 38).

No Target employee had been in the area where Esquivel fell for approximately 30 minutes. (Andrade Dep. at 59). At her deposition, Andrade was asked about that time period:

> Q: Okay. Now, can you read me what you wrote in your incident report on this line (indicating)?
>
> A: "Team member in this area within thirty minutes prior to the incident? No."
>
> Q: That's not minute by minute, right?
>
> A: Correct.
>
> Q: And the team member, it might have been more than thirty minutes, correct?
>
> A: To the point of the aisle that was in question. It's about twenty aisles to each department.
>
> Q: Okay, and could it have been more than an hour and a half?
>
> A: No.
>
> Q: Could it have been more than an hour?
>
> A: No.
>
> Q: But no one was in that aisle for at least thirty minutes based on this incident report, correct?
>
> A: Correct.

3

| | | |
|---|---|---|
| Q: | Is that acceptable— | |
| A: | No. | |
| Q: | —based on your training? | |
| A: | No. | |
| Q: | And why not? | |
| A: | We need to be visible to the guests hour and hour and make sure everything gets cleaned up even if you're not your department, you're still walking the floor. | |

(*Id.* at 58-59) (objections to questions omitted).

When Andrade was asked if the store's employees failed to follow Target's guidelines on June 8, 2010, her testimony was as follows:

Q: Would you agree that there was a failure on June 8th, 2010 with the monitoring of the entire store?

A: Yes.

Q: Do you agree you should be looking for spills in the aisles as mandated in the owner's manual there?

A: Yes.

Q: Would you agree there was a failure on June 8th, 2010 of this mandate to monitor the aisles?

A: Yes.

Q: And do you agree you should walk your department and adjacent areas with a team trainer and view cleanliness and neatness of the store?

A; Yes.

Q: And do you agree on June 8th, 2010 there was a failure to do so?

A: Yes.

(Andrade Dep. at 62-63) (objections to questions omitted). She later gave somewhat

4

contradictory answers to similar questions:

> Q: Just to clarify, you were asked about the events of June 8th, 2010 and on that date at least according to your report, water was found on the floor; is that correct?
>
> A: Correct.
>
> Q: And you were asked about certain failures of the system. Do you know that there was a failure of Target employees to do their job?
>
> A: No.
>
> Q: You were simply referring to according to the report and according to your investigation in creating the report water was found on the floor, correct?
>
> A: Correct.
>
> . . .
>
> Q: And so, you cannot say whether or not there was a failure to follow protocol or procedure on this day; is that correct?
>
> A: Correct.
>
> . . .
>
> Q: And any of those employees if they found something on the floor would have been responsible for standing by that condition and calling for assistance?
>
> A: Correct.
>
> Q: And there's nothing on the report here that suggests that anyone failed to do that in this instance; is that correct?
>
> A: Correct.
>
> Q: And so, the failures that you described regarding the clean and clutter free store and those sorts of things was simply in this instance when the situation was investigated and the fall was investigated there was water on the floor?
>
> A: Correct.

> Q: And not there was a breakdown in Target policy or procedure?
>
> A: No.

(*Id.* at 64-66).

In 2012, the Somerville Target store was remodeled, and the plumbing in the building was replaced. (*Id.* at 33-34). Andrade testified that she remembered there was one leak from the plumbing in the ceiling in the cosmetics department prior to the remodel. (*Id.* at 33). There is no evidence that the liquid on the floor was caused by a plumbing leak or any other problem in the building.

### B. Procedural Background

On May 22, 2013, plaintiff filed the complaint in this case in Middlesex Superior Court. The complaint alleges two claims: negligence and failure to warn. On June 11, defendant removed the case to this Court.

On May 16, 2014, defendant filed a motion for summary judgment.

## II. Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotations omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). In evaluating a

summary judgment motion, the court indulges all reasonable inferences in favor of the non-moving party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id*. at 256-57.

### III. Analysis

#### A. Negligence

The complaint first alleges that defendant was negligent. "Negligence is the failure to exercise that degree of care which a reasonable person would exercise in the circumstances." *Guzman v. Pring-Wilson*, 81 Mass. App. Ct. 430 432 (2012) (quoting *Morgan v. Lalumiere*, 22 Mass. App. Ct. 262, 267 (1986)). "To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." *Cracchiolo v. Eastern Fisheries, Inc.*, 740 F.3d 64, 69 (1st Cir. 2014) (quoting *Jupin v. Kask*, 447 Mass. 141, 146 (2006)); *see also Lev v. Beverly Enterprises-Massachusetts, Inc.*, 457 Mass. 234, 239-40 (2010).

Defendant contends that it did not breach the duty of care that it owed plaintiff. Where, as here, the plaintiff is an invitee who is "invited onto the property by the property owner for the *property owner's* benefit, the property owner owe[s] a duty to use reasonable care to keep the premises in reasonably safe condition in view of all the circumstances . . . ." *Papadopoulos v.*

*Target Corp.*, 457 Mass. 368, 371 (2010) (internal quotations and citations omitted) (emphasis in original). In slip-and-fall cases involving retail stores, the plaintiff must show that the "store caused a substance, matter, or item to be on the floor; the store operator had actual knowledge of its presence; or the substance, matter, or item had been on the floor so long that the store operator should have been aware of the condition." *Sheehan v. Roche Bros. Supermarkets, Inc.*, 448 Mass. 780, 782-82 (2007). It is undisputed that there is no evidence that defendant caused the liquid to be on the floor or had actual notice of the liquid.

Defendant contends that there is no evidence that the liquid was on the floor for a sufficiently lengthy period of time such that it should have had notice of its presence. Under Massachusetts law,

> the time allowed to a defendant to discover a substance depends on the "opportunity for discovery open to the defendant's employees by reason of their number, their physical proximity to the condition in question, and, in general, the likelihood that they would become aware of the condition in the normal performance of their duties."

*Hennessey v. Stop & Shop Supermarket Co.*, 65 Mass. App. Ct. 88, 93 (2005) (quoting *Oliveri v. Massachusetts Bay Transp. Auth.*, 363 Mass. 165, 167 (1973)). "Liability will only attach if the plaintiff establishes by a preponderance of the evidence that the foreign substance was there long enough that the defendant's employees should have seen it and cleaned it up." *Thurlow v. Shaw's Supermarkets, Inc.*, 49 Mass. App. Ct. 175, 176-77 (2000).[1]

When determining if a hazardous condition has been on the floor of a business long enough for a defendant to have constructive notice of it, Massachusetts courts consider the

---

[1] In *Sheehan*, the Massachusetts Supreme Judicial Court adopted the "mode of operation approach" to premises liability, allowing a plaintiff to satisfy the notice requirement with proof that "an unsafe condition on an owner's premises exists that was reasonably foreseeable, resulting from an owner's self-service business or mode of operation." 448 Mass. at 791. Plaintiff does not contend that the liquid she slipped on was the result of defendant's mode of operation.

8

appearance of the condition. "[W]here the effect of time is not obvious or remains unproven, no inference is warranted that the substance has been on the ground or floor long enough to have been seen and removed, despite the fact that it is described as dirty or black." *Oliveri*, 363 Mass. at 169 (collecting cases). Thus, even where a substance on the ground is described as dirty water, there is no inference that it was there for a length of time long enough for it to be noticed. *See id.* (citing *Leary v. Jordan Marsh Co.*, 322 Mass. 309, 309-10 (1948)).

The substance in this case was a pool of clear liquid about the size of a car tire. While it appears that defendant's employees assumed the liquid was water, no testing was done to confirm that assumption. While the pool of liquid was described as being "quite a lot," a description of a large pool of water is "a description [that does] not support an estimate of time that [is] other than highly speculative." *Kirmes v. Stop & Shop Companies, Inc.*, 1992 Mass. App. Div. 196, at *3 (1992). There is no evidence concerning the amount of time the liquid was on the ground, and therefore no inference can be drawn about whether it should have been noticed by defendant. *See Ventor v. Marianne, Inc.*, 1 Mass. App. Ct. 224, 227 (1973) (evidence of dirty, soapy water on laundromat floor insufficient because "the presence of the water and the description of its size, shape and color fail to support an inference that the defendant had had reasonable time in which to discover the condition and remedy it. Absent evidence of the essential time element, plaintiff cannot recover.").

It is true that "[t]he time element is usually not dispositive, but, alongside actors such as the physical proximity of employees, helps to assess the opportunity for discovery open to the defendant's employees." *Hennessey*, 65 Mass. App. Ct. at 93 (internal quotation omitted). For example, "while melting ice cream alone does not warrant an inference that enough time has

passed, where the melting ice cream is near an exit door and several of defendant's employees work near the door, and inference of negligence is warranted." *Id.* (quoting *Deagle v. Great Atl. & Pac. Tea Co.*, 343 Mass. 263, 265 (1961)). In this case, however, there is no evidence that defendant's employees should have noticed the liquid because of their proximity to the area where plaintiff slipped. Even assuming that the liquid had been there for half an hour, there is no evidence of the source of the liquid and no evidence that defendant's employees were nearby and should have noticed it. *Compare Stetson v. Shaw's Supermarkets, Inc.*, 2000 Mass. App. Div. 151, at *2 (2000) (no negligence where six-inch-wide spot of clear liquid near a doorway "was not shown to be present for any duration of time such that it should have been discovered . . . and removed") *with Thurlow*, 49 Mass. App. Ct. at 177-78 (defendant negligent where there was evidence that the last sweep of the area was an hour and forty-five minutes before plaintiff's fall and that a nearby ice case was the source of the liquid).

Plaintiff finally contends that defendant, "through its training and practices, creates a comprehensive and far reaching duty of reasonable care to its patrons." (Pl. Mem. at 9). She cites no authority for the proposition that a store's procedures and policies somehow elevate the duty of care a property owner has to those on its property, even if the patrons are not made aware of them. Even if that contention were true, there is still no evidence that the liquid was on the floor long enough for defendant's employees to find it if they had checked the area at more regular intervals. *See Clairmont v. Target Corp.*, 2012 WL 6553587, at *7 (D. Mass. Dec. 13, 2012) (granting summary judgment for defendant where floor was in good condition and checked by an employee fifteen minutes before the plaintiff's fall).

Accordingly, the motion for summary judgment will be granted as to the negligence

10

claim.

B. <u>**Failure to Warn**</u>

The complaint also alleges a claim of failure to warn. In Massachusetts, the owner of the premises of a business is obliged "to use due care to keep the premises provided for the use of its patrons in a reasonably safe condition, or *at least to warn them of any dangers that might arise from such use . . . of which the defendant knows or ought to know*." *Anderson v. Ro-Jack's Food Stores, Inc.*, 2001 App. Mass. Div. 41, at *1 (2001) (quoting *Oliveri*, 363 Mass. at 167) (emphasis in original). The duty to warn arises from notice or constructive notice of a hazardous condition. *See Dos Santos v. Coleta*, 465 Mass. 148, 154 (2013) (describing duty to warn as part of the "common-law duty of reasonable care to all persons lawfully on the premises"). Thus, "while the presence or absence of a warning . . . may well go to the issue of the reasonableness of the storeowner's efforts to take precautions, a duty to warn does not survive in the slip and fall context as a separate cause of action." *Stapleton v. Target Corp.*, 2011 WL 8198179, at *3 (D. Mass. Jul. 11, 2011).

Because the negligence claim fails, the failure-to-warn claim also fails. Accordingly, the motion for summary judgment will be granted.

## IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: July 11, 2014                                    United States District Judge